IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CRAIG KEITH BRYAN** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of the** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** ) | Case No. 15-CV-628-CVE -PJC |

## REPORT AND RECOMMENDATION

Plaintiff, Craig Keith Bryan ("Bryan"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Bryan's applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The matter has been referred to the undersigned Magistrate Judge for report and recommendation. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

## Background

Bryan was fifty-one years old on the alleged date of onset of disability and fifty-six on the date of the Commissioner's final decision. [R. 1, 166]. He is a high school graduate and has four or more years of college. [R.183]. He has previous experience as a teacher and a coach. [R.183, 202, 248]. He claims to have been unable to work since May 31, 2012, as a result of arthritis, high blood pressure, gout, spondylolisthesis, neck problems, headaches, a left inner ear problem, dizziness and back pain. [R. 182].

## The ALJ's Decision

In his decision, the ALJ found that Bryan met insured status requirements through December 31, 2017, and, at Step One, that he had not engaged in any substantial gainful activity since his alleged onset date of May 31, 2012. [R. 21]. He found at Step Two that Bryan had severe impairments of degenerative disc disease; osteoarthritis; status post, right knee repair; status post, right wrist repair; gout; and hypertension. *Id.*

At Step Three, he found that Bryan's impairments did not meet any listing. [R. 22]. He concluded that he had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) with no more than the occasional lifting up to 20 pounds, no more than the frequent lifting or carrying up to 10 pounds; standing/walking 6 hours out of an 8-hour workday; and sitting 6 hours out of an 8-hour workday.

[R. 22].

At Step Four, the ALJ determined that, based on the RFC, Bryan could perform past relevant work as a high school teacher, skilled work (SVP of 7) at the light level of exertion. [R. 28]. At Step Five, he made the alternative finding that considering Bryan's age, education, work experience and residual functional capacity, Bryan had also acquired work skills from past

3

relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, including math improvement teacher, DOT Code 099.227-042, skilled work (SVP 7) at the light exertional level) and teacher's aide I, DOT Code 099.327-010, skilled work (SVP 6) at the light exertional level,. [R. 29-30].

Accordingly, the ALJ found that Bryan had not been under a disability from May 31, 2012, through the date of the decision.

## Plaintiff's Allegations

On appeal, Bryan argues that (1) the ALJ failed at Step Five to reconcile inconsistent state agency findings at the reconsideration level; (2) the ALJ's RFC is unsupported by the opinions of record; and (3) the ALJ failed to perform a proper credibility determination.

## Analysis

### 1. Inconsistent State Agency Findings

Bryan's application for benefits was denied initially on May 2, 2013, and upon reconsideration on October 30, 2013. [R. 88-92. R. 93-102]. During the state agency review on reconsideration, agency physician Maria Pons, M.D., completed two separate Case Analyses. [R. 98-102 (Ex. 3A); R. 111-115 (Ex. 6A)]. In the first, dated July 16, 2013, under the Assessment of Vocational Factors Section, she applied § 202.06 of 20 C.F.R. Pt. 404, Subpt. P, App 2, (applicable to individuals who are advanced age, with a high school education or more, with *nontransferable* skills), and determined that Bryan was disabled. *Id.* at 100-101.

On August 21, 2013, Silveria Garcia of the Office of Quality Review—referencing Form SSA-1774 (Request for Corrective Action) and Form SSA-1047 (Vocational Consultant Case Analysis)—stated that there was "insufficient information in file to complete an assessment of

4

the claimant's ability to return to relevant past work at step five of the Sequential Evaluation Process." [R. 102 (Ex. 3A)].

Subsequently, Dr. Pons completed a second analysis—apparently backdated July 16, 2013—in which she applied § 202.07 of 20 C.F.R. Pt. 404, Subpt. P, App 2 (applicable to individuals who are advanced age, with a high school education or more, with *transferable* skills), and determined that Bryan was not disabled. *Id.* at 113-114.[2] Under the heading, "Reconsideration Analysis," Dr. Pons stated:

> The claimant describes his teacher/coach job as a composite job. Based on his physical RFC for light work he is not able to return to this job that he has described as heavy work lifting up to 100 lbs. The DOT does not have a counterpart for the teacher/coach job, however transferability of skills is an issue. The claimant has obtained skills that would allow him to transfer to the positions listed below. Using Medical Vocational Guidelines and Rule 202.07 a decision of not disabled is warranted.

[R. 110-111 (Ex. 6A)]. Bryan argues the ALJ failed to reconcile these disparate conclusions.

The Commissioner asserts no error occurred because the determination of whether Bryan had transferable skills is an administrative finding strictly within her purview, the RFC assessment was consistent with the opinions of Drs. Woodcock and Pons, and the ALJ obtained and relied on testimony of the vocational expert ("VE") as to Bryan's transferable skills in finding that he could perform other work. [Dkt. #15 at 10].

20 C.F.R. § 404.1527 provides, in pertinent part:

> (d) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> > (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition

---

[2] The transferability issue had a material impact on the outcome because, had the ALJ applied § 202.06 instead of § 202.07, Bryan would "grid out" at the advanced age of fifty-five.

5

> of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. *A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.* . . .
>
> (2) Other opinions on issues reserved to the Commissioner . . . . Although we consider opinions from medical sources on issues such as . . . *the application of vocational factors*, the final responsibility for deciding these issues is reserved to the Commissioner.
>
> (3) *We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section.*

(emphasis added). Thus, under § 404.1527, neither of Dr. Pons' Case Analyses were binding on the Commissioner with respect to the transferable skills issue or the ultimate finding of disability/nondisabilty.

Bryan contends that the ALJ never explicitly addressed the transferable skills issue. However, during the hearing, the ALJ acknowledged the issue and elicited testimony from the VE which established that Bryan had skills transferrable to light or sedentary work—specifically, other teaching jobs, including math improvement teacher (requiring the skills of teaching coursework, developing syllabi and meeting with parents to discuss progress) and teacher's aide I (requiring the same skills "…or to a lesser degree"). [R. 53-54, R. 76-79]. Accordingly, the ALJ's determination that Bryan had transferable skills has a sound evidentiary basis.

Bryan also complains that even if the ALJ properly relied on the VE's testimony about transferable skills, there is ambiguity about his past relevant work because he had a compound job (i.e., coach and teacher),[3] there is no corresponding DOT number for the job and he was "hired as a coach, not a teacher." [Dkt. #12 at 5]. There is no support in the record for his claim

---

[3] With respect to the compound job issue, the VE explained that the DOT "does not do combination jobs" and therefore, she would have to "divide it." [R. 75]. She stated that a high school teacher is classified as a light job with an SVP of 7, and the coaching job is classified as a medium job, heavy as performed, with an SVP of 7. *Id.*

6

that he was only a coach. To the contrary, Bryan represented in his Work History Report that he had been a "Teacher/coach" from 1998 to May 31, 2012. [R. 202]. At the administrative hearing, he testified that during the school year, he worked as both a teacher and a coach, typically teaching math from 8:00 a.m. until one or two in the afternoon and coaching the last hour of the day and after school. [R. 74-75]. During the hearing, the ALJ posed a hypothetical restricting Bryan to light work, and elicited testimony from the VE that Bryan would be unable to perform the coaching job but could perform his past job as a math teacher and could also perform the jobs of math improvement teacher and teacher's aide I. [R. 75-80].

Finally, Bryan contends the ALJ failed to explain how he arrived at the weights he assigned Dr. Pons' two Analyses. As set forth above, the only difference between Dr. Pons' two Case Analyses was in the Assessment of Vocational Factors Section, where the doctor was required to make an assumption about whether the applicant's skills were transferable or not. That determination had not yet been made and—under 20 C.F.R. § 404.1527—could *not* be made by the doctor. In her first assessment, the doctor assumed the skills *were not* transferable and in the second—at the direction of the Office of Quality Review—she assumed the skills *were* transferable. Ultimately, this issue was explored and resolved during the hearing when the ALJ questioned the VE about which—if any—of the skills for the two jobs were transferable. The resolution of this question, in turn, drove the determination of whether Bryan was disabled.

## 2. Evaluation of Medical/Nonmedical Opinions

### a. Chiropractors' Opinions

Bryan contends the ALJ improperly found he was not required to give significant weight to the opinions of treating chiropractors Chris Graham, D.C. and Paul E. Harris, D.C.

Social Security regulations provide that only "acceptable medical sources"—including licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists—are considered treating sources and can provide evidence to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1527(a)(2) and (b). However, the regulations also contemplate the use of information from "other sources," both medical and nonmedical, "to show the severity of [a] claimant's impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. §§ 404.1502, 404.1513(d). The agency has stated that "[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p (S.S.A.), 2006 WL 2329939 at *1302.

The ALJ noted that neither of the chiropractors was an "acceptable medical source" as defined in 20 C.F.R. § 404.1513(a), but acknowledged information from such "other sources" . . . . "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." [R. 27].

In an undated form detailing Bryan's injuries from a four-wheeler accident, Dr. Graham noted no work restrictions and stated, "Pt. may need to avoid lifting above head over 40 lbs. Refrain from 4 wheelers until Treatment finished." [R. 533, Ex. 16F]. The ALJ gave Dr. Graham's forty-pound lifting restriction "little weight" because it was inconsistent with the more restrictive limitation established by the state agency medical consultants. [R. 28].

Dr. Harris treated Bryan from July 7, 2011 to June 16, 2014. [R. 395-399 (Ex. 8F); R. 408-410 (10F); R. 411-413 (Ex. 11F); R. 544-545 (Ex. 17F)]. In a letter dated July 12, 2012 and addressed "To whom it may concern," he opined:

8

> Mr. Bryan has multiple regions of disability.  He suffers from a Grade 2 Spondylolisthesis at L5-S1, Grade 3 Chondromalcia of his right knee medial femoral condyle, and degenerative arthritis in multiple regions. He suffers from post-operative disability of his right wrist.  Primarily the right wrist is due to degenerative cyst formation within the carpals that have been surgically removed reducing mobility and ROM's.  Mr. Bryan is seen periodically in my office for treatment of chronic pain and disability arising from the degenerative arthritis in his spine and hips and the orthopedic doc for steroid injections in his right knee.  The patient will eventually undergo knee replacement. . . .

[R. 387 (Ex. 6F)].  The ALJ declined to accord the letter controlling weight, commenting:

> It is not clear that Dr. Harris provides an opinion with regard to any *functional limitations* of the claimant other than to say the stated conditions cause pain and disability. However, the undersigned does not adopt the diagnoses stated by Dr. Harris, because of the nature of his qualifications.

[R. 28] (emphasis added).

The ALJ properly considered the opinions of Dr. Graham and Dr. Harris as they related to the severity of Bryan's condition and the resulting effect on his functionality.  Accordingly, the undersigned rejects Bryan's argument that the ALJ erred in his consideration of the chiropractors' opinions.

### b. RFC Assessment

Bryan contends records of his other treating physicians also support a conclusion that he has severe impairments.  This argument misses the mark.  The ALJ found at Step Two (and the Commissioner does not dispute) that Bryan has severe impairments of degenerative disc disease; osteoarthritis; status post, right knee repair; status post, right wrist repair; gout and hypertension. However, the mere existence of a "severe" impairment is not sufficient proof of disability. Instead, Bryan must demonstrate that his impairments were so functionally limiting as to prevent him from engaging in any substantial activity.  *See* 42 U.S.C. §3(d)(1)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

The ALJ permissibly gave "great weight" to the RFC assessments of the state agency consultants, Dr. Woodcock and Dr. Pons, stating, "The familiarity of the State agency medical consultant with the Social Security Administration Disability evaluation program and the evidence of record warrant the greatest weight." [R. 28]. *See* SSR 96-6P.[4] The agency consultants' RFC determinations were consistent with each other and with the ALJ's assessment of Bryan's RFC.

Additionally, the ALJ cited other evidence supporting the RFC assessment, including:

- A May 18, 2012, report by David E. Nonweiler, M.D., in which he concluded that Bryan's right wrist was neurovascularly intact, he had full range of motion of the fingers in the wrist and was able to make a fist. [R. 28, R. 374 (Ex. 5F)];

- April 15, 2013 consultative examination findings and a functional evaluation assessment completed by physician Jerry D. First, M.D.[5] Dr. First reported that Bryan had decreased range of motion of the lumbosacral spine, but no pain in range of motion testing and slight decreased range of motion of the hips. [R. 24, R. 40l, 404-406]. Bryan easily came from reclining to sitting, sitting to standing positions; he was able to walk around the examination room without difficulty or assistance; and on exiting the examination, he walked down the 70-foot hallway without difficulty or need of assistance; and his gait was normal, safe and stable. [R. 24, R. 403]. The ALJ noted that Dr. First stated the claimant

---

[4] SSR 96-6P provides:

> State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act" and  who "consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC).").
> *See also* 20 C.F.R. § 416.927(c)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.)

1996 WL 374180, at *1-*2.

[5] The ALJ stated that he accorded "little weight" to the functional evaluation assessment but "considered the assessment in limiting the claimant to the twenty pounds occasional lifting required in light exertion work." [R. 28].

10

could effectively oppose the thumb to the fingertips and manipulate small objects but could not effectively grasp tools such as a hammer. He observed, however, that Dr. First's own examination findings did not support this conclusion, as he found no range of motion deficit in the fingers, thumbs or wrists and reflexes were within normal limits; there was no swelling, redness or joint deformity of the extremities. [R. 28, R. 402, R. 406 (Ex. 9F)].

The undersigned concludes that the ALJ's RFC assessment is supported by substantial evidence.

### c. Credibility Determination

"[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In assessing Bryan's credibility, the ALJ stated:

> The claimant's statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms, and objective documentation in the file.

[R. 26]. He supported his assessment by citing, *inter alia*, the following records:

- Bryan told consultative examining physician Dr. First that he is able to get eight hours of sleep per night on average. He can walk 100 yards but has pain in his knees and hips, stand for five minutes, sit for ten minutes, lift normally with his left hand and pick up a five gallon water jug (weighing forty-plus pounds) with his right. He alleged he can go up one flight of stairs. However, Dr. First found his gait was normal, safe and stable and he walked down the 70-foot hallway without difficulty or assistance. [R. 26, R. 402-403 (Ex. 9F)]. He had only slight decreased range of motion of the lumbosacral spine, negative straight-leg raising test, and normal heel-toe walk, sensation and deep tendon reflexes. He had no musculoskeletal abnormality, redness or welling of the extremities. *Id.*

11

- In January 2014, he reported a three-day history of pain after a four-wheeler wreck. [R. 26, R. 537 (Ex. 16F)]. X-rays showed grade II spondylolisthesis and the chiropractor, Dr. Graham, limited overhead reaching. [R. 26, R. 533-534 (Ex. 16F)]. However, Bryan did not mention the accident during the hearing, and the ALJ did not have this medical evidence at the time of the hearing. [R. 26].

- Bryan has lived alone for the last seven years on 6.5 acres; he drove 15-17 miles to the hearing; and had driven 120 miles to Poteau, Oklahoma, a couple of months before the hearing. [R. 26, R. 64]. He stood a couple of times during the hearing but never mentioned a four-wheeler accident or hunting in January 2014. [R. 26]. However, he testified he has difficulty with stairs, inclines and un-level ground, "which is entirely inconsistent with hunting/4-wheeling." [R. 26, R. 60].

- The prolonged sitting when driving and the standing and walking required in hunting would support the six hours sitting, standing/walking required in light exertion work. This is inconsistent with the functional limitations in sitting, standing and walking alleged at the hearing and to Dr. First. Further, Bryan testified in the hearing that he was able to lift forty to fifty pounds with both arms and a light exertion RFC allows lifting only to twenty pounds occasionally. [R. 26, R. 59].

- Bryan's treatment history is consistent with his allegation of impairments and weighs in favor of his credibility; however, the record shows that his pain has responded to nonsteroidal anti-inflammatory medication. [R. 26, R. 373 (Ex. 5F)]. Additionally, although Bryan alleges nausea from his gout medication, the record does not establish through any form of treatment or preventative medications that this is of a degree that it limits the claimant's ability to work. He also takes Diovan for hypertension, but there is no evidence of damage to the body system from hypertension that would limit him to a greater degree than stated in the RFC. [R. 27].

- The state agency medical consultants all determined Bryan has the residual functional capacity to perform the requirements of the full range of light work. [R. 28, R. 85-92 (Ex. 2A), R. 93-102 (Ex. 3A), R. 105-115 (Ex. 6A), R. 414-415 (Ex. 12F)].

Support in the medical record is among the various factors properly considered in making a credibility determination. 20 C.F.R. §§ 404.1529, 416.929. In his decision, the ALJ discussed the portions of the records he believed contradict Bryan's subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence. Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant

unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition). The record is devoid of any opinion from any treating provider suggesting any functional limitations beyond those imposed by the ALJ.

## Conclusion

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge **RECOMMENDS** that the decision of the Commissioner finding Bryan not disabled be **AFFIRMED**.

## Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation, but must do so by December 21, 2016. If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b). A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm waiver rule"). *Moore v. Astrue*, 491 Fed. Appx. 921, 923 (10th Cir. 2012) (unpublished), citing *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

ENTERED this 7th day of December, 2016.

Paul J. Cleary
United States Magistrate Judge