UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRAIG K. BRYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-0628-CVE-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 18) of Magistrate Judge Paul J. Cleary recommending that the Court affirm the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 19) to the Report and Recommendation, and defendant has filed a response (Dkt. # 20) to the objection.

**I.**

On January 22, 2013, plaintiff protectively filed an application for Title II disability benefits. Dkt. # 11, at 89. Plaintiff's application stated that he suffered from various impairments that left him unable to work, including arthritis, high blood pressure, gout, spondylolisthesis, neck pain, headaches, left inner ear issues, dizziness, and back pain. Id. Plaintiff's claims were denied initially on May 2, 2013, and upon reconsideration on October 30, 2013. Id. at 23. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and that hearing was held on June 17, 2014. Id. at 52.

Plaintiff appeared at the hearing and was represented by an attorney. Id. Plaintiff was 56 years old at the time of the hearing and testified that he lived alone in a mobile home on his parents' property. Id. at 59-60. Plaintiff worked for 30 years as a baseball/softball coach and math teacher, retiring in May 2012. Id. at 61. Plaintiff testified that he retired because he was physically unable to do his job anymore. Id. at 62. Plaintiff asserted that he could not perform his coaching duties because he could not throw or hit balls to the children. Id. at 62. Plaintiff also asserted that he could not walk up stairs, stand or stand for long periods of time, or bend over. Id. at 61-62. Plaintiff stated that he could sit for about 10 minutes before needing to stand up and stand for about 10 minutes before needing to sit down. Id. at 65. Plaintiff testified that he could lift up to 20 pounds with his right arm, 50 pounds with his left arm, and 50 pounds with both arms together. Id. at 63.

A vocational expert testified at the hearing. Id. at 77. The vocational expert asked plaintiff to clarify the details of his coach/teacher position. Id. at 78. Plaintiff responded that he taught math from 8:00 a.m. until 1:00 p.m. or 2:00 p.m. and coached for the last hour of the school day and after school. Id. The ALJ asked the vocational expert whether a man of plaintiff's age and educational background who was limited to occasional lifting up to 20 pounds, frequent lifting up to 10 pounds, standing and walking six hours of an eight hour workday, and sitting six hours out of an eight hour workday, could perform plaintiff's former position. Id. at 79-80. The vocational expert testified that the hypothetical man could only perform the teaching portion of plaintiff's former position. Id. at 80. The ALJ also asked the vocational expert whether plaintiff had any skills transferable to light or sedentary work. Id. The vocational expert responded, "just other teaching jobs." Id. After being asked to provide examples of light jobs using plaintiff's transferable skills, the vocational expert testified that plaintiff was suited to the positions of math improvement teacher and teacher's aide,

using the transferable skills of teaching course work, developing syllabi, and meeting with parents to discuss progress. Id. at 81-82. The vocational expert also confirmed that neither position required any skills plaintiff did not already have. Id. at 83.

On September 10, 2014, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 23-35. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date and that plaintiff had severe impairments affecting his ability to work, including "degenerative disc disease; osteoarthritis; status post, right knee repair; status post, right wrist repair; gout; [and] hypertension." Id. at 25. The ALJ further found that plaintiff did not have an impairment or combination of impairments that was equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 26. The ALJ then formulated plaintiff's residual functional capacity (RFC). The ALJ found that plaintiff could:

> perform the full range of light work as defined in 20 C.F.R. 404.1567(b) with no more than the occasional lifting up to 20 pounds, no more than the frequent lifting or carrying up to 10 pounds; standing/walking 6 hours out of an 8-hour workday; and sitting 6 hours out of an 8-hour workday.

Id.

In formulating plaintiff's RFC, the ALJ gave great weight to the opinions of the state agency medical consultants. Id. at 31-32. The ALJ also followed "a two-step process," in which he first determined whether there was any underlying medically determinable physical or mental impairment that could reasonably be expected to produce plaintiff's pain or other symptoms, and second evaluated the intensity, persistence, and limiting effects of plaintiff's symptoms. Id. at 26-27. This second step included making a finding on the credibility of plaintiff's statements that were not substantiated by objective medical evidence. Id. at 27. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that

plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible because they were inconsistent with his activities. Id. at 27-28, 30. A couple of months before the hearing, plaintiff had driven 120 miles to Poteau, Oklahoma. Id. at 30. Plaintiff's records show that he engaged in hunting and was involved in a four-wheeler accident in January 2014, but at his hearing plaintiff did not mention four-wheeling or hunting. Id. The ALJ found that plaintiff's prolonged sitting when driving long distances and the standing and walking required to hunt supported the six hours of sitting, standing, and walking required in light exertion work and was inconsistent with plaintiff's assertions regarding his limitations. Id. The ALJ also found four-wheeling inconsistent with plaintiff's asserted limitations. Id. The ALJ noted that plaintiff's assertions about his lifting ability exceeded the lifting required by light exertion work, and that plaintiff's pain had responded well to non-steroidal anti-inflammatory medication. Id. Thus, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not credible to the extent they were inconsistent with the RFC. Id. at 31.

The ALJ concluded that plaintiff could perform his past relevant work as a high school teacher, but not his past relevant work as an athletic coach. Id. at 32-33. In the alternative, the ALJ concluded that considering plaintiff's age, education, work experience, and RFC, plaintiff had also acquired work skills from past relevant work that would be transferable to other occupations with jobs existing in significant numbers in the national economy, including math improvement teacher and teacher's aide. Id. at 33-34. Thus, the ALJ found that plaintiff was not disabled. Id. at 34.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. See id. Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. See id.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step four of the analysis but he also made alternative step five findings. Step four has three separate phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], see SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 427 (West 1992), and in

5

>the second phase, he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). If a claimant can perform his or her past relevant work, the claimant is not disabled and the ALJ is not required to continue to step five of the analysis. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). Defendant bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that

detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## A.

Plaintiff argues that the ALJ failed to reconcile inconsistent state agency findings. Dkt. # 12, at 3. As part of the reconsideration of plaintiff's application for benefits, state agency physician Maria Pons, M.D., completed two reports. The two reports contain the same medical opinions, but one applies 20 C.F.R. § 202.06 (applicable to individuals who are advanced age, with a high school education or more, with nontransferable skills) and the other applies 20 C.F.R. § 202.07 (applicable to individuals who are advanced age, with a high school education or more, with transferable skills). Compare Dkt. # 11, at 97-106, with id. at 109-19. The report applying § 202.07 found plaintiff not disabled because plaintiff could perform the occupations of secondary school teacher and teacher's aide. Id. at 118. The report applying § 202.06 found plaintiff disabled because if plaintiff did not have transferable skills he would "grid out" at fifty-five years old. Id. at 105. Plaintiff argues that the ALJ was required to explain why he chose one opinion over the other, and that the ALJ therefore erred by failing to reconcile Dr. Pons's two reports. Dkt. # 12, at 4.

Whether plaintiff has transferable skills is not a medical opinion. "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). How to apply vocational factors is a decision reserved for the Commissioner and cannot be a medical opinion. See id. at § 404.1527(d). Dr. Pons's medical opinions are the same in both reports, and are consistent with the other state agency physician's findings and the RFC. See Dkt. # 11, at 26, 94. Thus, the ALJ

7

was not required to reconcile inconsistent state agency medical opinions because there were no inconsistencies.

Plaintiff's argument can also be understood as an objection to the sufficiency of the ALJ's findings regarding transferability of skills. A claimant for social security benefits is considered to have transferable skills "when the skilled or semi-skilled work activities [he] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). "Transferability is most probable and meaningful among jobs in which (i) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved." Id. at § 404.1568(d)(2). "When an ALJ finds that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable." Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001).

Here, the ALJ explicitly relied upon the testimony of the vocational expert in making his determination regarding transferable skills. Dkt. # 11, at 34. During the hearing, the vocational expert first asked plaintiff to clarify the details of his former position as a coach/teacher. Plaintiff explained that during most of the school year he taught math from 8:00 a.m. until 1:00 p.m. or 2:00 p.m. and coached for the last hour of the school day and after school. The ALJ then developed the record on the transferability of plaintiff's skills by asking the vocational expert what transferable skills plaintiff had acquired, what jobs would be available to a person with plaintiff's limitations applying those skills, and what, if any, additional skills would plaintiff need to perform those jobs. The vocational expert testified that plaintiff had the transferable skills of teaching course work, developing syllabi, and meeting with parents to discuss progress; that with his limitations and using

8

those transferrable skills, plaintiff could work as a teacher's aide or math improvement teacher; and that the skills necessary to work as a teacher's aide or math improvement teacher are the same or less than those skills plaintiff had already acquired. See id. at 80-83. Therefore, the Court finds that the ALJ made sufficient findings to support a decision of transferable skills, and the ALJ's decision that plaintiff had transferable skills is supported by substantial evidence. See Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005) (holding that the ALJ's decision that the plaintiff had transferable skills was supported by substantial evidence when "the ALJ carefully led the [vocational expert] through the regulatory requirements for transferability of skills for a person of advanced age").

**B.**

Plaintiff argues that the ALJ failed to perform a proper credibility determination. Dkt. # 12, at 9. "Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence.

Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Plaintiff argues that the ALJ merely recited boilerplate language regarding plaintiff's credibility. Dkt. # 12, at 9. However, the ALJ based his credibility analysis on multiple, specific inconsistencies between plaintiff's statements on the one hand and plaintiff's activities and medical record on the other. The ALJ determined that plaintiff's statements about his impairments and their impact on his daily activities were not entirely credible because plaintiff engaged in activities inconsistent with his self-reported limitations. Plaintiff engaged in hunting, four-wheeling, and driving long distances, which the ALJ found to be inconsistent with plaintiff's statements regarding his abilities to stand, sit, and walk. The ALJ found plaintiff's statements about his limitations were not consistent with the examining physician's findings regarding plaintiff's ability to walk and his range of motion, and that plaintiff's medical record showed his pain responded to non-steroidal anti-inflammatory medication.

Plaintiff also argues that the ALJ erred because he relied on a flawed report by the examining physician. Dkt. # 12, at 9-10. Plaintiff wrote a letter that he submitted as part of his request for reconsideration which stated there were two errors in the report. Dkt. # 11, at 125-26. Plaintiff asserted that he told the doctor he could not lift a five gallon bucket, but the doctor had written he could. Id. at 125. Plaintiff also asserted that the doctor felt his knees only through his pants and

never directly looked at them, yet he wrote in his report that plaintiff had no abnormality, redness, or swelling of the extremities despite never seeing the color of plaintiff's knees. Id. Plaintiff's assertions about the problems in the report do not require the Court to reverse the ALJ's credibility determination. First, as the ALJ explained, plaintiff asserted at the hearing that he could lift up to 50 pounds with both arms, and the RFC allows lifting at most 20 pounds occasionally. Second, although the ALJ included in his summary of the examining physician's findings that the doctor reported no abnormality, redness, or swelling of the extremities, there is no indication that the ALJ specifically relied upon the doctor's finding that plaintiff's extremities were not red when making his credibility determination. The paragraph discussing the inconsistencies undercutting plaintiff's credibility does not mention the lack of redness in plaintiff's extremities. Third, even if the ALJ considered the flawed portions of the examining physician's report, substantial evidence supports the ALJ's credibility determination. The ALJ based his credibility determination on multiple factors, and an issue with a small portion of one physician's report does not change the fact that substantial evidence supports the ALJ's determination. Thus, the Court finds no basis to reverse the ALJ's credibility determination.

Plaintiff's opening brief also alleges that the ALJ erred by failing to properly consider certain medical opinions. Dkt. # 12, at 6–8. The magistrate judge found that the ALJ properly considered all medical opinions in the record. Dkt. # 18, at 7–9. No objection has been made to the magistrate judge's findings on this issue. The Court has independently reviewed the record and agrees with the magistrate judge's findings.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 18) is **accepted**, and the Commissioner's decision denying plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 24th day of January, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE